DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA and<br>PEOPLE OF THE VIRGIN ISLANDS<br><br>      v.<br><br>YASMEEN MASSICOTT,<br><br>      **Defendant.** | )<br>)<br>)<br>)    Criminal Action No. 2015-0002<br>)<br>)<br>)<br>)<br>) |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Omodare B. Jupiter, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the Government's Motion to Set Aside Plea Agreement ("Motion") (Dkt. No. 99) and Defendant's Response in Opposition to the Government's Motion to Set Aside Plea Agreement ("Response") (Dkt. No. 102). In its Motion, the Government requests that the Court set aside or nullify the plea agreement and schedule a trial in this action in light of Defendant's alleged breach of the agreement. For the following reasons, the Court will deny the Government's Motion.

## I. BACKGROUND

On January 27, 2015, the Government filed an Indictment against Defendant charging her with five counts. (Dkt. No. 1).[1] Following negotiations, the parties entered into a plea agreement on October 11, 2016. (Dkt. No. 68). Defendant agreed to plead guilty to Count 3 of the Indictment, which charged her with possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and the Government agreed to dismiss the remaining counts of the Indictment upon the Court's adjudication of Defendant's guilt on Count 3. *Id.* at § 2. Section 3 of the plea agreement addressed the potential impact of the United States Sentencing Guidelines ("the Guidelines") on the terms of the agreement and established the parties' understanding that "the Court may impose any sentence[] up to the statutory maximum . . . and . . . is not bound by any position of the parties" as expressed in the agreement. *Id.* at § 3. Section 3 also contained a provision addressing departures under the Guidelines ("the Departure Provision"), which provided that "[t]he parties agree that there are no grounds for departure from the applicable guideline range." *Id.* at § 3(j).

The Court accepted Defendant's guilty plea on November 1, 2016 (Dkt. No. 75), and an initial Presentence Investigation Report ("PSR") was released by the United States Probation Office on November 30, 2016. Both the Government and Defendant filed objections to the PSR's guideline range calculation, and both parties submitted sentencing memoranda. (Dkt. No. 82; Dkt. No. 88). In the introduction to her review of the sentencing factors under 18 U.S.C. § 3553(a),

---

[1] Count 1 is providing contraband in prison in violation of 14 V.I.C. § 666 and 18 U.S.C. §§ 1791(a)(1) and (b)(1). Count 2 is providing contraband in prison in violation of 14 V.I.C. § 664 and 18 U.S.C. §§ 1791(a)(1) and (b)(3). Count 3 is possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Count 4 is possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). Count 5 is conflict of interest in violation of 3 V.I.C. §§ 1102(3) and 1108.

Defendant's sentencing memorandum contained a two-paragraph review of the possible bases for a downward departure based on "post-offense rehabilitation efforts." (Dkt. No. 82 at 4-5). While noting that the Court could impose the sentence she requested without granting a departure, Defendant asserted that "there are bases for the [C]ourt to [grant a departure] if there were such a need." *Id.* at 4. For its part, the Government argued in its sentencing memorandum that any "discussion regarding departure" by Defendant should be considered waived based on the Departure Provision of the plea agreement. (Dkt. No. 88 at 6-7).

A sentencing hearing was held on March 22, 2017, at which time the Court resolved the objections to the PSR presented by the parties. After addressing the objections, the Court turned to the issue of whether any departures recognized by the Guidelines were applicable in this case. The Court noted that the parties "agreed in the plea agreement that there are no grounds for departure from the applicable guideline range," and that the Government argued in its sentencing memorandum that any discussion regarding departure should be deemed "waived as it conflicts with the terms of the plea agreement." (Dkt. No. 103 at 4:10-18). The Court also noted that Defendant asserted in her sentencing memorandum that her post-offense rehabilitation efforts could provide grounds for a departure, although she also "indicate[d] that the Court need not grant a departure in this case." *Id.* at 5:3-10.

The Court went on to explain that, "notwithstanding the fact that the parties have agreed that a departure is not appropriate in this case," the Court's review of the record raised questions about whether a departure was warranted. *Id.* at 13:2-14. Specifically, the Court explained that it was considering whether the departure provision that speaks to mental and emotional condition under the Guidelines Section 5H1.3 might apply, particularly when viewed alongside other factors including Defendant's post-offense rehabilitation efforts. *Id.* at 10:23–11:20. The Court ordered

3

additional briefing by the parties with respect to the departure issue and continued the sentencing hearing pending submission of the briefs. *Id.* at 15:9-25.

Defendant submitted a motion for a downward departure and memorandum in support on April 4, 2017. (Dkt. No. 94). Defendant's motion addressed the grounds for a downward departure based on mental condition under Section 5H1.3 of the Guidelines and based on Defendant's post-offense rehabilitation efforts. Defendant also argued that the Court could consider her mental condition and post-offense rehabilitation efforts in combination to find that a downward departure was warranted. The Government, after requesting an extension of time, filed its reply to Defendant's motion for a downward departure on April 26, 2017, in which it argued that no departure was warranted. (Dkt. No. 97).

The Government then filed the instant Motion on May 30, 2017. In its Motion, the Government argues that it should be "relieved from compliance with the [plea] agreement" based on Defendant's alleged breach of the agreement through her advocacy for a downward departure. (Dkt. No. 99 at 1, 5). Noting that "[a] plea agreement is tantamount to a contract," the Government contends that the plain meaning of the plea agreement's Departure Provision "is that no party contemplates a departure, no party believes any grounds for a departure exist and hence no party [will] advocate for a departure." *Id.* at 4-5.[2] The Government asserts that Defendant breached the plea agreement by advancing an argument for a downward departure in her sentencing memorandum, and then aggravated that breach by (1) failing to inform the Court of her obligation not to advocate for a downward departure at the sentencing hearing, and (2) filing her motion for a downward departure after the Court ordered additional briefing at the sentencing hearing. *Id.* at 6.

---

[2] The Departure Provision reads: "<u>Departures.</u> The parties agree that there are no grounds for departure from the applicable guideline range." (Dkt. No. 68 at § 3(j))

4

The Government requests nullification of the plea agreement as the remedy for Defendant's alleged breach. *Id.* at 8.

In her Response, Defendant argues that she did not breach the terms of the plea agreement. She asserts that "[t]he plea agreement did not contain a waiver that estopped [Defendant] from ever arguing for a departure," and therefore any advocacy on her part for a departure did not constitute a breach of the plea agreement. (Dkt. No. 102 at 2). Defendant also argues that, to the extent the terms of the plea agreement are ambiguous with respect to her right to advocate for a departure, any ambiguity must be resolved against the Government. *Id.* at 8. Defendant further contends that the two-paragraph discussion of a post-offense rehabilitation departure in her sentencing memorandum should not be interpreted by the Court as a request for a departure, and that her later advocacy for a departure did not constitute a breach of the plea agreement because it was made in response to the Court's order for additional briefing on the downward departure issue. *Id.* at 12-14. Finally, Defendant requests that the Court impose a remedy other than the nullification of the plea agreement in the event that it determines that Defendant breached the terms of the plea agreement. *Id.* at 3.

## II. DISCUSSION

### A. Applicable Legal Standards

"Plea agreements, although arising in a criminal context, are analyzed under contract law standards." *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998) (citing *United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir. 1989)). "Under contract principles, a plea agreement necessarily 'works both ways. Not only must the government comply with its terms and conditions, but so must [the defendant].'" *United States v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007) (quoting *United States v. Carrara*, 49 F.3d 105, 107 (3d Cir. 1995)). Plea agreements must be enforced

against breaching defendants to the same extent they are enforced in the event of a government breach. *Id.* Otherwise, "the government would have no meaningful recourse if it performed its end of the agreement but did not receive the benefit of its bargain in return"—an unacceptable result given our justice system's dependence on the plea agreement process. *Id.* at 422-23 (citing *United States v. Alexander*, 869 F.2d 91, 95 (2d Cir. 1989); *Santobello v. New York*, 404 U.S. 257, 261 (1971)).

Because a plea agreement is contractual in nature, courts begin their analysis of a defendant's alleged breach by first examining the plain meaning of the text of the agreement. *Id.* at 424-25 (citing *United States v. Gebbie*, 294 F.3d 540, 545 (3d Cir. 2002)). "[T]he first step is to decide whether the plea agreement is ambiguous or unambiguous." *Gebbie*, 294 F.3d at 551. A plea agreement "is ambiguous if it is capable of more than one interpretation." *Id.* (quoting *Pacitti v. Macy's*, 193 F.3d 766, 773 (3d Cir. 1999)) (internal quotations omitted). Given due process concerns in the plea agreement context and "the government's tremendous bargaining power," plea agreements are "strictly construe[d] . . . against [the government] when it has drafted the agreement." *United States v. Baird*, 218 F.3d 221, 229 (3d Cir. 2000) (citation omitted). This principle applies regardless of whether the government or a defendant is the alleged breaching party. *Williams*, 510 F.3d at 424. Any construction of ambiguous terms must be reasonable, and "[t]he essential question is whether the alleged breaching party's 'conduct is consistent with the parties' reasonable understanding of the agreement.'" *Id.* (quoting *United States v. Hodge*, 412 F.3d 479, 485 (3d Cir. 2004)). The government carries the burden to prove a breach by a defendant by a preponderance of the evidence. *Id.*

B. Analysis

1. Defendant's Advocacy for a Downward Departure

The Court begins by addressing Defendant's argument that the section of her sentencing memorandum in contention here should not be interpreted as a request for a downward departure. Defendant argues that because the Court could impose the sentence that she requested through a variance rather than a departure[3]—and because the two paragraphs addressing the bases for a post-offense rehabilitation departure "pale in significance when compared to the length and detail" of her arguments related to the 18 U.S.C. § 3553(a) factors—the Court should not find that she requested a departure through her sentencing memorandum. (Dkt. No. 102 at 12).

While it is true that Defendant qualified the discussion of the grounds for a post-offense rehabilitation departure in her sentencing memorandum by stating that "there is no need for the [C]ourt to grant a departure in this case," she went on to assert that "there are bases for the [C]ourt to do so if there were such a need." (Dkt. No. 82 at 4). She then proceeded to outline Third Circuit case law with respect to downward departures based on a defendant's post-offense rehabilitation efforts, and highlighted the facts relevant to her own rehabilitation that would provide the Court with a basis for granting a departure. *Id.* at 4-5. Although the argument was contained in only two paragraphs of a 25-page sentencing memorandum, it served to advance Defendant's view that the Court could consider a downward departure based on the circumstances present in Defendant's case. Moreover, the argument was effective, as the Court proceeded to consider the applicability

---

[3] "A 'variance' is a sentence that deviates from the guidelines range based on [*United States v.*] *Booker*[, 543 U.S. 220 (2005),] and the sentencing factors listed in 18 U.S.C. § 3553(a). A 'departure,' on the other hand, is a sentence that differs from the guidelines range based on specific guidelines provisions that authorize such changes." *Williams*, 510 F.3d at 429 n.6 (Weis, J. dissenting) (citing *United States v. Gunter*, 462 F.3d 237, 247 n.10 (3d Cir. 2006)).

of the post-offense rehabilitation departure at the sentencing hearing. Accordingly, the Court finds that Defendant advocated for a downward departure in her sentencing memorandum.[4] If this advocacy was prohibited by the terms of the plea agreement—as the Government contends—then it would constitute a breach of the plea agreement by Defendant.

### 2.     Terms of the Plea Agreement

The particular term of the plea agreement at issue here is its Departure Provision, which states: "The parties agree that there are no grounds for departure from the applicable guideline range." (Dkt. No. 68 at § 3(j)). The Government contends that there is no ambiguity in the Departure Provision, and that the "plain meaning of [the] provision is that no party contemplates a departure, no party believes any grounds for a departure exist and hence no party [will] advocate for a departure." (Dkt. No. 99 at 5). The Government asserts that this is "the reasonable understanding of the agreement," and that Defendant's advocacy for a departure in her sentencing memorandum therefore constituted a breach. *Id.* at 5-6.

Defendant contests the Government's interpretation of the Departure Provision as a waiver precluding Defendant from ever advocating for a downward departure. Rather, Defendant asserts that the plain meaning of the Departure Provision imposes no such restriction. (Dkt. No. 102 at 8). She argues that, while the Departure Provision establishes that the parties agreed *at the time they executed the plea agreement* that there were no grounds for a departure, it contains no language precluding her from later advocating for a departure before the Court. *Id.* at 9. Defendant also notes that "the parties enter [a plea] agreement knowing that the sentencing hearing will occur many

---

[4] Because the Court finds that Defendant advocated for a downward departure in her sentencing memorandum, it need not address the parties' arguments with respect to additional departure-related advocacy by Defendant that came in response to the Court-ordered supplemental briefing of the downward-departure issues.

months into the future, and that some of the things that the sentencing judge will take into account are things that happen or develop after the execution of the plea agreement." *Id.* at 13. She asserts that the most reasonable interpretation of the Departure Provision in light of the absence of any language imposing an obligation on Defendant to refrain from arguing for a departure is that she was "not prohibited from making an argument for a departure if such an argument developed." *Id.* at 9.

The Government relies heavily on *United States v. Williams*, 510 F.3d 416 (3d Cir. 2007), in arguing that Defendant breached the plea agreement. In *Williams*, the Third Circuit vacated Williams' sentence and remanded the case for resentencing after finding that Williams had breached the terms of his plea agreement by arguing for downward departures and a variance in his sentencing memorandum and at the sentencing hearing. *Id.* at 425, 428. The pertinent sections of the plea agreement in *Williams* read as follows:

> This [U.S. Attorney's] Office and Williams recognize that the United States Sentencing Guidelines are not binding upon the Court. This Office and Williams nevertheless agree to the stipulations set forth herein, and agree that the Court should sentence Williams within the Guidelines range that results from the total Guidelines offense level set forth below. This Office and Williams *further agree that neither party will argue for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level*.

*Id.* at 418-19 (emphasis in original). The plea agreement contained an additional paragraph establishing that "[t]he parties *agree not to seek or argue for any upward or downward departure or any upward or downward adjustment* not set forth herein." *Id.* at 425. (emphasis added). Finding that the plea agreement thus "unambiguously prohibited Williams from making downward departure motions," the Third Circuit held that his later requests for downward departures and a variance constituted breaches of the agreement. *Id.*

In contrast to the clear prohibition on advocacy for departures in the plea agreement in *Williams*, the Departure Provision at issue here contains no language restricting the right of either party to advocate for a departure before the Court. While other provisions of the plea agreement place obligations on the parties to either take or refrain from taking action during and after the sentencing proceedings, the Departure Provision does not.[5] In the absence of such language, the Court finds Defendant's interpretation of the Departure Provision to be reasonable. To avoid ambiguity with respect to a defendant's obligation not to seek a departure, a plea agreement should explicitly state that a defendant is prohibited from advocating for the same.[6]

Having determined that the Departure Provision is ambiguous because "it is capable of more than one interpretation," *Gebbie*, 294 F.3d at 551—and having concluded that Defendant's

---

[5] The plea agreement's provision on acceptance of responsibility reads: "The government *agrees to recommend* that the defendant receive credit for acceptance of responsibility at the time of sentencing, assuming the defendant does in fact clearly demonstrate acceptance of responsibility . . . ." (Dkt. Nol. 68 at § (e)) (emphasis added). Section (k) of the plea agreement provides: "The government *agrees to recommend* a sentence at the low-end of the applicable guideline range determined by the Court if the low end is not less than 12 months." *Id.* at § (k) (emphasis added). With respect to Defendant's right to appeal, the plea agreement states: "[T]he defendant *knowingly waives the right to appeal* any sentence within the maximum provided in the statute[s] of conviction . . . in exchange for the concessions made by the United States in this plea agreement." *Id.* at § 4.

[6] Other courts have concluded that the terms of a plea agreement were unambiguous where they explicitly stated the restrictions on a defendant's right to seek a departure. *See United States v. Bowe*, 257 F.3d 336, 339, 345 (4th Cir. 2001) (plea agreement unambiguous in its prohibition of defendant's right to argue for downward departure where it stated: "*[N]o departures will be sought by either party* and all arguments are limited to recommendations regarding a sentence within the applicable range of the U.S. Sentencing Guidelines") (emphasis added); *United States v. Cimino*, 381 F.3d 124, 127 (2d Cir. 2004) (defendant directly violated plea agreement by seeking departure where provision of the agreement stated: "The parties agree that neither a downward nor an upward departure from the Sentencing range set forth [in this agreement] is warranted. Accordingly, *neither party will seek such a departure or seek any adjustment not set forth herein*") (emphasis added); *United States v. Swisshelm*, 848 F.3d 1157, 1159 (8th Cir. 2017) (defendant breached plea agreement by arguing for sentence below the Guidelines where he agreed in plea agreement "*not to seek a downward departure* from the Guidelines or a sentence outside the Guidelines range") (emphasis added).

interpretation is reasonable—the Court will "construe any ambiguities in the [provision] against the government as drafter." *Williams*, 510 F.3d at 425 (citing *Gebbie*, 294 F.3d at 545). Because the Government failed to include any language explicitly prohibiting Defendant from advocating for a departure in the plea agreement, the Court finds that the terms of the plea agreement did not prohibit Defendant from advancing arguments for a downward departure. Defendant's advocacy for a downward departure did not, therefore, constitute a breach of the plea agreement. Accordingly, the Court will deny the Government's request for nullification of the plea agreement.

### III. CONCLUSION

For the reasons set forth above, the Court will deny the Government's Motion to Set Aside Plea Agreement and will schedule the continuation of the sentencing hearing in this matter.

An appropriate Order accompanies this Memorandum Opinion

Date: August 29, 2018 _____/s/_____
WILMA A. LEWIS
Chief Judge